UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

BENJAMIN MITCHELL,

                Plaintiff,                  09 Civ. 3623

   -against-                             OPINION

CITY OF NEW YORK, WARDEN, ROBERT SHAW;
(G.R.V.C.) INDIVIDUAL CAPACITY; C.O.
JANI, #17359, (G.R.V.C.) INDIVIDUAL
CAPACITY; C.O. HART; (G.R.V.C.)
INDIVIDUAL CAPACITY WILLIAM C. THOMPSON;
NYC COMPTROLLER, INDIVIDUAL CAPACITY;
MICHAEL AARONSON; NYC COMPTROLLER
OFFICE, BUREAU CHIEF; INDIVIDUAL
CAPACITY; DAVID BARBARO, NYC COMPTROLLER
OFFICE, DIVISION CHIEF; INDIVIDUAL
CAPACITY; DOCTOR, THOMAS SCHWENOR, PA;
PRISON HEALTH SERVICES, INDIVIDUAL
CAPACITY,



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/23/10

                Defendants.

------------------------------------------X

A P P E A R A N C E S:

          <u>Pro Se</u>

          BENJAMIN MITCHELL
          #07-a-5226
          Upstate Correctional Facility
          309 Bare Hill Road
          P.O. Box 2001
          Malone, NY  12943-2931

          <u>Attorneys for Defendants</u>

          MICHAEL A. CARDOZO
          Corporation Counsel of the City of New York
          100 Church Street, Room 2-165
          New York, NY  10007
          By:  David A. Rosinus, Jr.

**Sweet, D.J.**

Defendants City of New York (the "City"), Warden Robert Shaw ("Warden Shaw"), Correction Officer Lavdrim Jani ("Officer Jani"), former New York City Comptroller William C. Thompson ("Comptroller Thompson"), Bureau Chief Michael Aaronson ("Aaronson"), Division Chief David Barbaro ("Barbaro"), and Physician Assistant Thomas Schwaner (s/h/a Thomas Schwenor) ("Schwaner") (collectively, the "Defendants") have moved under Rule 12(b)(6), Fed. R. Civ. P. to dismiss the Amended Complaint of Plaintiff Benjamin Mitchell, pro se ("Mitchell" or the "Plaintiff").  Upon the conclusions set forth below, the motion is granted, and the Amended Complaint is dismissed.

**Prior Proceedings**

Mitchell filed his complaint on April 9, 2009 and the Amended Complaint on October 5, 2009.

The Amended Complaint alleges that, on July 12, 2007 at approximately 9:45 p.m., Mitchell "fell on a wet floor in front of the Television Room" at the George R. Vierno Center ("G.R.V.C."), Annex 15B on Riker's Island and that there was not

1

a wet floor sign on the floor when he slipped, and that Officer

Jani "never filed an injury report." Am. Compl. § II.D.


It also alleges that, the following day, he saw

Schwaner, a physician assistant, after "complaining about pain

in his back and chest" and that he had a "Medi-port in his chest

attached to his main vein," and was "very concerned that the

fall had detached the connection between the Medi-port and the

vein." Id. Schwaner prescribed "Tylenol and muscle relaxers"

for Plaintiff and gave him a note that would enable him to get

an extra mattress "to ease his pain." Id.


The Amended Complaint also alleges that Mitchell sent

a Notice of Claim to the New York City Comptroller's Office on

July 31, 2007 and that the letter had not been sent out in mid-

August of 2007, that he subsequently gave another Notice of

Claim to his sister to mail and he received an acknowledgement

of the receipt of his claim from the Comptroller's Office on

March 19, 2009. Id. Attached to the Amended Complaint is a

letter dated October 10, 2007, addressed to him at G.R.V.C. from

Aaronson, a bureau chief at the Comptroller's Office, which he

says he did not receive until April of 2009 (when it was

attached to a subsequent letter from the Comptroller's Office)

because he was incarcerated at Downstate Correctional Facility beginning in September 2007.  Id. & Letter from Michael Aaronson dated Oct. 10, 2007 (attached to the Amended Complaint as an unlabelled exhibit; hereinafter "Aaronson Letter").

The instant motion was marked fully submitted on June 9, 2010.

## The Rule 12(b)(6) Standard

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations are accepted as true, and all inferences are drawn in favor of the pleader.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.1993).  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

Though the pleading standard set forth in Rule 8 of the Fed.R.Civ.P. is a liberal one, it is not without its demands:

3

> [T]he pleading standard Rule 8 announces ...
> demands more than an unadorned, the-
> defendant-unlawfully-harmed-me accusation. A
> pleading that offers labels and conclusion
> or a formulaic recitation of the elements of
> a cause of action will not do. Nor does a
> complaint suffice if it tenders naked
> assertions devoid of further factual
> enhancement.

Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009)

(internal cites and quotes omitted).  Thus, a complaint must

allege sufficient factual matter to "state a claim to relief

that is plausible on its face."  Id. (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).


    In meeting this "plausibility standard," the plaintiff

must demonstrate more than a "sheer possibility" of unlawful

action; pleading facts that are "'merely consistent with' a

defendant's liability ... 'stops short of the line between

possibility and plausibility of entitlement to relief.'"  Id.

(quoting Twombly, 550 U.S. at 557); see also Reddington v.

Staten Island Univ. Hosp., 511 F.3d 126, 131 (2d Cir.2007)

("Although the pleading standard is a liberal one, bald

assertions and conclusions of law will not suffice.  To survive

dismissal, the plaintiff must provide the grounds upon which his

claim rests through factual allegations sufficient to raise a

right to relief above the speculative level."  (internal

quotation marks and citations omitted)); Gavish v. Revlon, Inc.,
No. 00-CV-7291, 2004 WL 2210269 at *10 (S.D.N.Y. Sept. 30, 2004)
("[B]ald contentions, unsupported characterizations, and legal
conclusions are not well-pleaded allegations and will not defeat
a motion to dismiss.").

The Court is not limited to the four corners of the
complaint, but may consider outside documents which are integral
to it regardless of whether attached to the complaint, so long
as the pleader has notice of them or refers to them.  See
Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir.
2000).  "[W]hile courts generally do not consider matters
outside the pleadings, they may consider documents attached to
the pleadings, documents referenced in the pleadings, or
documents that are integral to the pleadings in order to
determine if a complaint should survive a 12(b)(6) motion."
Garcia v. Lewis, 2005 WL 1423253 at *10 (S.D.N.Y. June 16,
2005).

**The Amended Complaint Fails To**
**State A Fourteenth Amendment Claim**

For a pretrial detainee to show a violation of his
Fourteenth Amendment rights regarding jail conditions, he must

5

meet a two-prong test.  As to the first, objective prong, the
plaintiff must show that a deprivation is "sufficiently serious"
or that jail conditions impose a "substantial risk of serious
harm."  As to the second, subjective prong, the plaintiff must
show that the defendants acted with deliberate indifference.
See Farmer v. Brennan, 511 U.S. 825, 834 (1994); see also Cuoco
v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000).  "[M]ore than
mere negligence" is required to meet the deliberate indifference
standard.  Cuoco, 222 F.3d at 106 (quoting Weyant v. Okst, 101
F.3d 845, 856 (2d Cir.1996)); see also, e.g., Wilson v. Seiter,
501 U.S. 294, 305 (1991) (noting that "mere negligence" would
not satisfy, inter alia, the deliberate indifference standard).
Instead, an official must "know[] of and disregard[] an
excessive risk to inmate health or safety."  Farmer, 511 U.S. at
837.

     The Amended Complaint fails to establish that the wet
floor posed a substantial risk of serious harm, because
"slippery prison floors, at best, pose a claim of negligence,
which is not actionable under the United States Constitution."
Jennings v. Horn, No. 05 Civ. 9435, 2007 U.S. Dist. LEXIS 57941,
at *18 (S.D.N.Y. Aug. 7, 2007) (citing, inter alia, LeMaire v.
Maass, 12 F.3d 1444, 1457 (9th Cir. 1993)); see also Covington v.

Westchester County Dep't of Corr., No. 06 Civ. 5369, 2010 U.S.
Dist. LEXIS 11020, at *22 (S.D.N.Y. Jan. 25, 2010) (citing,
inter alia, Jennings, 2007 U.S. Dist. LEXIS 57941); Sylla v.
City of New York, No. 04 Civ. 5692, 2005 U.S. Dist. LEXIS 31817,
at *9-10 (E.D.N.Y. Dec. 8, 2005) ("Courts have regularly held
that a wet or slippery floor does not pose an objectively
excessive risk to prisoners." (collecting cases)).  As in
Sylla, Mitchell "has not pleaded facts from which one could
infer that the [wet floor] posed an excessively serious risk to
him." Sylla, 2005 U.S. Dist. LEXIS 31817, at *10.  His
allegations that the floor was wet, that no sign to warn him of
this had been placed nearby, and that he fell, do not state a
claim as to the objective prong of the deliberate indifference
test.  See also Wehrhahn v. Frank, No. 04-C-475-C, 2004 U.S.
Dist. LEXIS 19060, at *3-4 (W.D. Wis. 2004) (failure to place
sign warning of wet floor only states a claim of negligence, not
a constitutional claim) (cited in Sylla, 2005 U.S. Dist. LEXIS
31817, at *10).

        The Amended Complaint also fails to state a claim as
to the subjective prong of that test, which requires that a
correction officer know of and be deliberately indifferent to
the alleged risk.  The allegation that Officer Jani "witnessed

the fall and afterwards decided to place [a] big floor fan" on

the floor directed at Plaintiff, and that he did not file an

injury report fails to state a claim on the deliberate

indifference test's subjective prong.  The Amended Complaint

fails to state a claim on either the subjective or the objective

prongs of the deliberate indifference test.

Mitchell has not asserted facts that would prevent his

slip-and-fall claim from being properly categorized as "a garden

variety tort" that "is not cognizable under Section 1983" as a

constitutional violation and that must instead be "litigated in

state court."  Flowers v. City of New York, 668 F. Supp.2d 574,

578 (S.D.N.Y. 2009) (citing Young v. County of Fulton, 160 F.3d

899, 902 (2d Cir. 1998)).  Mitchell refers to this claim as a

"tort claim" (Am. Compl. § V) and has alleged that the absence

of a wet floor sign in the area where he slipped constituted "a

direct breach of duty of care and [was] also foreseeable [sic],"

(Id. § II.D (internal quotations omitted and capitalization

removed)).  Elsewhere in his Amended Complaint, he states that

"[n]ot placing a wet floor sign, [sic] is something so easy to

do, it's just a neglect of duty of care."  Id.  By explicitly

referring to most of the basic elements of a state law tort

claim (see, e.g., Akins v. Glens Falls City Sch. Dist., 53

8

N.Y.2d 325, 333 (1981)), Mitchell has alleged a state law
negligence claim, not a federal civil rights violation arising
out of deliberate indifference that would be cognizable under 42
U.S.C. § 1983.

The Amended Complaint has alleged that the day after
he slipped and fell, Plaintiff received medical treatment from
Schwaner. Am. Compl. § II.C. According to Mitchell, he had a
"Medi-port in his chest attached to his main vein" at that time
and was "very concerned that the fall had detached the
connection between the Medi-port and the vein." Id. Schwaner
did not take any x-rays, but prescribed "Tylenol and muscle
relaxers" for Plaintiff and gave him a note that would enable
him to get an extra mattress "to ease his pain." Id.

Construed liberally, Mitchell is attempting to state a
Fourteenth Amendment claim of deliberate indifference to a
serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106
(1976); see also Weyant, 101 F.3d at 856 (applying the Estelle
standard to case with a pretrial detainee plaintiff). The
standard for this type of deliberate indifference is nearly
identical to the standard discussed above regarding deliberate
indifference to a risk of harm; in this instance, a plaintiff

9

must show that 1) the medical need was sufficiently serious, and
2) the defendant was deliberately indifferent to that need.
Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

As to the first prong, a medical need is sufficiently
serious if it is "a condition of urgency . . . that may produce
death, degeneration, or extreme pain." Id. (quoting Hathaway v.
Coughlin, 37 F.3d 63, 66 (2d Cir.1994)). Mitchell has alleged
only that he was experiencing "pain in his back and chest" when
he went to see Schwaner. Although he says that he was "very
concerned that the fall had detached the connection between the
medi-port [on his chest] and his vein" (Am. Compl. § II.C), he
does not allege that this connection had in fact detached, and
he subsequently notes that his medi-port was removed several
months later, in November of 2007, apparently without incident.
See Id. § III (Plaintiff states that his fear "increased until
the medi-port was removed on 11/30/07," but that after it was
removed he "began to feel just a little bit safer"). Mitchell's
discomfort, and his concerns, are not the sort of injuries that
produce a condition of urgency that could lead to death,
degeneration, or extreme pain. See, e.g., Henderson v. Doe, No.
98 Civ. 5011, 1999 U.S. Dist. LEXIS 8672, at *2, *6-7 (S.D.N.Y.
June 10, 1999) (broken finger not sufficiently serious medical

10

need because it was not a condition of urgency that could lead
to death, degeneration, or extreme pain); Grant v. Burroughs,
No. 96 Civ. 2753, 2000 U.S. Dist. LEXIS 12917, at *11-12
(S.D.N.Y. Sept. 8, 2000) (plaintiff's allegation that he was in
pain for two months with a cheek laceration and swollen cheek
held not sufficiently serious for the same reason); see also
Coqueran v. Eagen, No. 98 Civ. 7185, 2000 U.S. Dist. LEXIS 595,
at *10 (E.D.N.Y. Jan. 20, 2000) (discussing Second Circuit cases
with examples of delay or denial of medical care that is
"sufficiently serious" to survive a motion to dismiss).

As to the subjective prong, Schwaner was not
deliberately indifferent to Plaintiff's medical need.  Mitchell
noted that Schwaner prescribed him Tylenol and muscle relaxers,
"and also gave Plaintiff a note for an extra Mattress [sic] to
ease his pain" and that this type of medication helps him to
sleep.  (Am. Compl. § II.C.)

Mitchell's allegation that he did not receive an x-ray
on his back, and his claim that his fear "remain[s]" because he
has not had an x-ray does not establish the subjective prong.  A
defendant only acts "with the requisite deliberate indifference
when that official 'knows of and disregards an excessive risk to

11

inmate health or safety,'" <u>Chance v. Armstrong</u>, 143 F.3d 698,
702 (2d Cir. 1998) (<u>quoting</u> <u>Farmer</u>, 511 U.S. at 837), and "a
complaint that a physician has been negligent in diagnosing or
treating a medical condition does not state a valid claim of
medical mistreatment" under the deliberate indifference
standard.  <u>Estelle</u>, 429 U.S. at 106.  Whether or not the alleged
failure to perform an x-ray creates a valid medical malpractice
claim, a constitutional claim alleging deliberate indifference
"is not a vehicle for bringing medical malpractice claims, nor a
substitute for state tort law."  <u>Smith v. Carpenter</u>, 316 F.3d
178, 184 (2d Cir. 2003).  Schwaner was plainly not deliberately
indifferent to Mitchell's medical needs and even if Mitchell
nevertheless believes that Schwaner's failure to order x-rays
constituted medical malpractice, that claim is not cognizable
under § 1983, since "medical malpractice does not become a
constitutional violation merely because the victim is a
prisoner."  <u>Estelle</u>, 429 U.S. at 105-6.

        For the reasons stated above, the Amended Complaint
fails to state a Fourteenth Amendment claim.


**The Amended Complaint Fails To State A**
**Claim Against Comptroller Aaronson And Barbaro**

12

The Amended Complaint alleges that Mitchell sent a
Notice of Claim to the New York City Comptroller's Office on
July 31, 2007 and that the letter had not been sent out in mid-
August of 2007 and that he subsequently gave another Notice of
Claim to his sister to mail.  Am. Compl. § II.D.  Mitchell
received an acknowledgement of the receipt of his claim from the
Comptroller's Office on March 19, 2009.  He also received the
Aaronson Letter, dated October 10, 2007, acknowledging receipt
of his Notice of claim, which he says he did not receive until
April of 2009 because he was incarcerated at Downstate
Correctional Facility beginning in September 2007 but the letter
was addressed to him at G.R.V.C. and "the legal mail never
followed" him.  Id. & Aaronson Letter.

The Amended Complaint appears to take issue with
Barbaro's letter dated April 16, 2009 (which Plaintiff has also
attached to his Amended Complaint as an unlabelled exhibit;
hereinafter "Barbaro Letter"), which noted that his "[notice of]
claim was filed timely" and appears to confuse two requirements:
General Municipal Law § 50-e(1)(a)'s requirement that the Notice
of Claim itself be filed within 90 days of the incident in
question (which Plaintiff did do in a timely fashion), and
General Municipal Law § 50-i(1)(c)'s requirement that any

13

lawsuit (or special proceeding) be filed within one year and 90
days of the incident (which, it appears, Mitchell did not do in
a timely fashion).

If construed liberally, the Amended Complaint might be
interpreted to claim that Plaintiff "lost (or was severely
hampered in) the ability to file a lawsuit," which would
constitute a violation of his Due Process rights. Ponterio v.
Kaye, No. 06 Civ. 6289, 2007 U.S. Dist. LEXIS 4105, at *34
(S.D.N.Y. Jan. 22, 2007). The allegation would be that, because
the Comptroller's Office did not send the October 2007 letter
acknowledging receipt of his Notice of Claim to him at Downstate
Correctional Facility, his new address, Mitchell was unable to
file a lawsuit concerning his slip-and-fall. See Am. Compl. §
II.D.

Mitchell does not allege that he contacted the
Comptroller's Office to let them know of his change of address
but implies that the Comptroller's Office should affirmatively
determine his latest address whenever they send him a mailing.

Given the applicable law, Mitchell's failure to
receive the October 2007 acknowledgement letter did not affect

14

his ability to file a lawsuit.  Although General Municipal Law §
50-i(1)(a) does require, as a condition precedent, that a
litigant have filed a Notice of Claim before bringing any
lawsuit or special proceeding, there is no requirement that the
Comptroller's Office respond to that litigant's Notice of Claim
before a lawsuit is filed arising out of its subject matter.
See Gen. Mun. Law § 50-i(1)(b) (action or special proceeding may
be prosecuted if, inter alia, "at least thirty days have elapsed
since the service" of the litigant's Notice of Claim "and
adjustment or payment thereof has been neglected or refused").
Even if Mitchell is correct that the Comptroller's Office should
be blamed for his lack of timely receipt of the October 2007
acknowledgement letter, that purported fault of the
Comptroller's Office did not result in any infringement of his
Due Process rights.

        Even if the Amended Complaint did state a Due Process
claim on this basis, it does not identify any individuals from
the Comptroller's Office who could be held liable under the law.
It alleges that individual Defendants "William C. Thompson,
David Barbaro and Michael Aaronson all have Supervisory
positions [sic] and should have made sure that Plaintiff's legal
mail" reached him in a timely manner.  Am. Compl. § II.D.

                                15

However, "[b]ecause vicarious liability is inapplicable to . . .
§ 1983 suits, a plaintiff must plead that each Government-
official defendant, through the official's own individual
actions, has violated the Constitution." Ashcroft v. Iqbal, 129
S.Ct. 1937, 1948 (2009); see also Id. at 1949 (noting that
supervisors "may not be held accountable for the misdeeds of
their agents"); see also Colon v. Coughlin, 58 F.3d 865, 873 (2d
Cir. 1995) ("It is well settled in this Circuit that personal
involvement of defendants in alleged constitutional deprivations
is a prerequisite to an award of damages under § 1983.")
(quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994)).
Absent direct participation in a constitutional violation, a
supervisor may only be liable if he "create[d] a policy or
custom under which unconstitutional practices occurred."
Bellamy v. Mount Vernon Hospital, No. 07 Civ. 1801, 2009 U.S.
Dist. LEXIS 54141, at *27 (S.D.N.Y. June 26, 2009); see also
Joseph v. Fischer, No. 08 Civ. 2824, 2009 U.S. Dist. LEXIS
96952, at *40-41 (S.D.N.Y. Oct. 7, 2009).  The Amended Complaint
has not alleged direct involvement of any of the Comptroller
defendants, nor does it allege that anyone created a policy or
practice that violated Plaintiff's rights.  As such, he does not
allege facts sufficient to support a finding of liability on

16

behalf of the individual Defendants from the Comptroller's
Office.


**The Amended Complaint Fails To State**
**A Claim For Denial Of Access To The Mails**


The Amended Complaint alleges that the Notice of Claim
had not been sent for approximately half a month after Plaintiff
had submitted it for mailing; that he gave another Notice of
Claim to his sister to mail; that he did not receive the
Aaronson Letter, dated October 10, 2007, until April of 2009,
because he had been transferred to Downstate Correctional
Facility by the time the response was sent to G.R.V.C.; and that
he "believes that someone tampered with the legal mail so that
[his] claim would not be heard." Am. Compl. § II.D.  Construed
liberally, this portion of the Amended Complaint appears to be
attempting to plead that Mitchell's First Amendment right of
access to the mails was abridged without sufficient penological
justification.  See Thornburgh v. Abbott, 490 U.S. 401, 408-13
(1989).


However, the alleged delay in the mailing of
Mitchell's Notice of Claim does not appear to have injured
Plaintiff.  The Comptroller's Office undisputedly received the

17

Notice of Claim by October 10, 2007, based on the Aaronson
Letter; and, as a result, his Notice of Claim was filed timely,
as Barbaro noted in his letter dated April 16, 2009.  Am. Compl.
§ II.D & Barbaro Letter.  Thus, no cognizable injury arising out
of this alleged delay has been stated.  See also Zimmerman v.
Tribble, 226 F.3d 568, 573 (7th Cir. 2000) ("Allegations of
sporadic and short-term delays in receiving mail are
insufficient to state a cause of action grounded upon the First
Amendment.").

        The Amended Complaint alleges that Mitchell believes
"someone" tampered with his legal mail (Am. Compl. § II.D) but
it does not allege that any particular correction officer or
other City employee was responsible.  Because "[i]t is well
settled in th[e Second] Circuit that personal involvement of
defendants in alleged constitutional deprivations is a
prerequisite to an award of damages under § 1983" (Colon, 58
F.3d at 873 (quoting Wright, 21 F.3d at 501)), and because
Mitchell seeks only monetary damages in this lawsuit (see Am.
Compl. § V), his failure to identify any defendant as personally
involved in the alleged "tampering" is fatal to his claim.

18

In addition, the allegations concerning tampering do not "state[] a plausible claim for relief" because there is an "'obvious alternative explanation'" based on the well-pleaded facts. Iqbal, 129 S.Ct. at 1950, 1951-2 (quoting Twombly, 550 U.S. at 567). At the time that the Comptroller's Office sent Aaronson's responsive letter to Mitchell at G.R.V.C., he had recently been transferred to Downstate Correctional Facility. See Am. Compl. § II.D. Based on the well-pleaded facts in the Amended Complaint, it appears that his "legal mail never followed" him. Conversely, the Amended Complaint fails to allege any facts to support a tampering claim. The fact that one piece of Mitchell's mail was not forwarded to his new address does not constitute tampering with the mails, nor does it violate Plaintiff's First Amendment rights. See Higgs v. Carver, No. 99-148-C, 2000 U.S. Dist. LEXIS 18930, at *36-37 (S.D. Ind. Dec. 15, 2000) (citing Zimmerman, 226 F.3d at 573) (allegation that three letters were not forwarded to detainee plaintiff when he was housed at a diagnostic center does not state a cause of action under the First Amendment), aff'd in part, vacated in part on other grounds, 286 F.3d 437 (7th Cir. 2002).

19

The Amended Complaint thus fails to state a First Amendment claim.

## The Amended Complaint Fails To State A Claim Against The City

It is well-established that a municipality may be liable under § 1983 only if a plaintiff has pled and proved three elements:  "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); citing, inter alia, Monell v. New York City Dep't of Soc. Services, 436 U.S. 658, 690-91 (1978)).  The Amended Complaint has failed to allege that Plaintiff's alleged injuries resulted from an unconstitutional municipal policy or practice.  The Amended Complaint does not even contain a "[t]hreadbare recital[] of the elements of" a so-called Monell claim, much less provide "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

20

## Conclusion

      Based upon the conclusions set forth above, the motion of the Defendants to dismiss the Amended Complaint is granted. Mitchell is granted leave to replead within 20 days.

      It is so ordered.

New York, NY
September 22, 2010

                               ROBERT W. SWEET
                                  U.S.D.J.

21